UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASEY F. HOFFMANN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KEVIN JONES,<br><br>　　　　Defendant. | No. 2:15-cv-1526-EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel this action brought pursuant to 42 U.S.C. § 1983, concerning events that occurred while he was detained at the Lassen County Adult Detention Facility ("the Jail"). Defendant, who was the Jail Commander at that time, seeks summary judgment. ECF No. 34. For the reasons that follow, the motion must be denied.

**I.　Background**

Plaintiff's verified complaint alleges that the defendant violated plaintiff's First Amendment rights while he was incarcerated in the Jail. ECF No. 1. The alleged constitutional violation concerned defendant's treatment of a grievance filed by plaintiff complaining that the pipes in his housing unit repeatedly backed up, spilling sewage into the cells. *Id.* at 3-5. Plaintiff was dissatisfied with the responses he had received to the grievance. ECF No. 35-1 at 56.[1] He

---

[1] The only copy of the grievance that has been provided to the court is missing its second page, which apparently contained a portion of plaintiff's description of the problem. ECF No. 35-1 at 56. However, there is no dispute that the grievance concerned the backing-up of the sewage pipes.

1

believed that he could seek further review from the Sheriff and that such review was necessary to exhaust administrative remedies. ECF No. 1 at 3. Plaintiff's core allegation is that defendant refused to allow the grievance to go further and instead threatened plaintiff that if he continued to use the grievance procedure the defendant would take away plaintiff's good-time credits. *Id.* at 2.

## II. The Parties' Factual Contentions and Evidence

The following facts have been taken from the parties' statements of undisputed facts and accompanying evidence.[2] They are undisputed unless otherwise noted.

Plaintiff spent several months of 2015 incarcerated in the Jail. ECF No. 34-2 at 2 (Def.'s Statement of Undisputed Facts ISO Mot. for Summ. J. (hereinafter "DUF") No. 1); ECF No. 39 at 9 (Pl.'s Response to DUF (hereinafter "PRDUF") No. 1). The evidence submitted by the parties shows that, between March 12, 2015 and June 2, 2015, plaintiff filed 22 grievances. ECF No. 40 at 17-27. Between June 28, 2015 and August 20, 2015, plaintiff filed an additional 14 grievances. ECF No. 35-1 at 56-58; ECF No. 35-2 at 1-43.

In one of those grievances (Log No. 15-JailG-446, filed June 28, 2015), plaintiff complained that the pipes in his housing unit backed up repeatedly, distributing sewage into the cells. ECF No. 34-2 at 2 (DUF No. 2); ECF No. 39 at 9 (PRDUF No. 2); ECF No. 35-1 at 56. The sewage contained feces, urine, garbage, and toilet paper. ECF No. 34-2 at 5 (DUF No. 15); ECF No. 39 at 14 (PRDUF No. 15).

It is not clear from the grievance form whether there was a first-level review; that portion of the grievance form is blank. ECF No. 35-1 at 56. At the second level, correctional staff Roxanne Hardin responded: "It was explained to Mr. Hoffman we do have cleaning supplies that will help with his concerns, however he did not want to resolve the issue." *Id.*; ECF No. 35-1 at 16; ECF No. 34-2 at 2 (DUF No. 3); ECF No. 39 at 9-10 (PRDUF No. 3). At the third level of review, Sergeant Wes Gray wrote, "Your grievance is accepted and the appropriate action will be

---

[2] Defendant objects to various assertions in plaintiff's declaration (ECF No. 40). ECF No. 42. Those objections are overruled. At this stage, the court reviews evidence not for admissibility but for whether it could be presented in an admissible form at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Here, the evidence in question may be presented in admissible form at trial.

2

taken." ECF No. 35-1 at 56; ECF No. 34-2 at 2 (DUF No. 5); ECF No. 39 at 10 (PRDUF No. 5). Plaintiff testified in his deposition that Gray had reiterated Hardin's response, "[b]ut nobody actually said I will do my best to fix the underlying problem other than the fact that we're just going to give out cleaning supplies." ECF No. 35-1 at 16. Plaintiff was again dissatisfied with the response, because the pipes were backing up "sometimes two or three times a week. Sometimes on a daily basis, it all depended." *Id.* at 17. He claims that maintenance man Mike McGorva told plaintiff that the Jail was built in a "low land bog" and believed that to be the source of the plumbing problem. ECF N0. 39 at 9-10 (PRDUF No. 3).

Plaintiff sought further review, to which defendant responded on July 6, 2015: "Your grievance has been accepted and approved for the sewer backing up. Appropriate cleaning was conducted and remedies were taken to avoid in future. This issue is resolved." ECF No. 35-1 at 57; ECF No. 34-2 at 3-4 (DUF No. 9); ECF No. 39 at 12 (PRDUF No. 9). Plaintiff responded, "I have not signed off on this and wish to pursue the next level of Action." ECF No. 35-1 at 20, 57; ECF No. 34-2 at 4 (DUF No. 10); ECF No. 39 at 12-13 (PRDUF No. 10). Plaintiff noticed that inmates were provided cleaning supplies when the pipes backed up. ECF No. 35-1 at 19. But he wanted the county to repair the plumbing and did not believe that defendant had truly taken steps to prevent the problem from recurring. *Id.* at 19-20.

Plaintiff met with defendant in the company of correctional officer Gennie McArthur sometime between defendant's July 6th response and July 8, 2015.[3] ECF N0. 35-1 at 24-25; ECF No. 34-2 at 6 (DUF No. 21). Defendant noted on the grievance form: "Met w/Hoffman, explained his grievance is accepted and [illegible]. We will continue to clean w/disinfectant cleaning supplies if it occurs again. He disagrees & doesn't believe we use disinfectant & [that the pipes] shouldn't back up. Resolved." ECF No. 35-1 at 57.

The crux of plaintiff's complaint is that, at this meeting, defendant threatened him with the loss of good time credits if he continually used the grievance process. ECF No. 35-1 at 27.

---

[3] Plaintiff testified at his deposition that he thinks the meeting occurred on July 6th, but defendant's notes place the meeting on July 8th. The precise date of the meeting is not relevant to the instant motion.

While there is no dispute that Ms. McArthur was present during the meeting, neither party has provided a declaration from her. Significantly, defendant recalls "explaining to Plaintiff that the Jail had a policy which permitted discipline of an inmate for misuse of the grievance procedure." ECF No. 34-3 at 6 (Decl. of Jones, ¶ 21). Defendant characterizes this statement not as a threat but rather as a reasonable response to plaintiff's many grievances, and consistent with Jail policy, because misuse of the grievance system diverts staff resources. ECF No. 34-2 at 14-16 (DUF Nos. 58-69).

But plaintiff argues that Jail staff "made inmates use the grievance procedure to get most everything done in the Jail." ECF No. 39 at 36 (PRDUF No. 56). He argues that he had not misused the grievance procedure. ECF No. 39 at 21 (PRDUF No. 27), at 22 (PRDUF No. 30), at 23 (PRDUF No. 32), & at 36 (PRDUF No. 38). Plaintiff believes that defendant made the statement to retaliate against him because plaintiff had gone "over his head" to get his Kosher diet approved and for filing a lawsuit over the Kosher diet. ECF No. 40 at 3. Plaintiff refers the court to Eastern District Case No. 2:15-cv-01558-JAM-KJN. *Id.* at 2. The court takes judicial notice of the record of that case. In recommending denial of the parties' cross-motions for summary judgment, Magistrate Judge Newman found it undisputed that, on February 23, 2015, plaintiff requested a Kosher diet. Case No. 2:15-cv-01558-JAM-KJN, ECF No. 95 at 5-6. Sometime between that date and March 23, 2015, defendant denied the request. *Id.* at 6. Plaintiff's request ultimately made its way to Undersheriff Mineau, who granted the request. *Id.* at 10.

The evidence submitted by the parties indicates some disagreement between plaintiff and defendant about whether plaintiff could obtain further review of his plumbing grievance by the Sheriff or Undersheriff. According to defendant, such review was available previously but the county changed the process at some unspecified point in 2015 to make defendant, as Captain and Jail Commander, the highest review possible. ECF No. 34-3 at 3 (Decl. of Jones, ¶¶ 10-11). Plaintiff disputes that the policy had been changed at the time his grievance about the plumbing was being processed. ECF No. 39 at 37 (PRDUF No. 57). Plaintiff believed that he still had to take the grievance all the way up to the Sheriff to exhaust his administrative remedies under the Prison Litigation Reform Act. *Id.* at 24-25 (PRDUF No. 35). Accordingly, on July 13, 2015, he

submitted an "Inmate Request Form" to defendant, stating: "I would like to have a memo drafted to the effect Cpt Jones can and dose [sic] act in the capacity to exhaust all administrative remedys [sic] as is requiered [sic] by the courts for litigation." ECF No. 35-1 at 58. Defendant responded: "Your grievance #15JAILG446 was <u>accepted</u> and <u>granted</u>. There is no further action necessary on a grievance that is resolved or granted. All Non-Resolved grievances are subject to the review @ each level up to the Sheriff." *Id.* According to plaintiff, defendant "accepted" and "granted" the grievance as a way of preventing plaintiff from obtaining further review without actually fixing the plumbing. ECF No. 39 at 24 (PRDUF No. 34).

According to defendant, he had no authority to authorize "major construction" or "redesign of the plumbing system" at the Jail. ECF No. 34-3 at 7 (Decl. of Jones, ¶ 27); ECF No. 34-2 at 14 (DUF No. 59). Plaintiff counters that defendant had the authority to request those changes from relevant county decisionmakers. ECF No. 39 at 37-38 (PRDUF No. 59). Defendant argues additionally that such changes would have been pointless, because the plumbing problems were caused by inmates who clogged their sinks and toilets. ECF No. 34-2 at 5 (DUF No. 17). Plaintiff disagrees and contends that inmates clogged their plumbing in order to wash the sewage away with clean water and to protest civil rights violations. ECF No. 39 at 15 (PRDUF No. 17); ECF No. 35-1 at 23.

Plaintiff continued to grieve various issues, including a number of complaints about his legal paperwork. ECF No. 35-2. On July 30, 2015, plaintiff complained that an officer was not providing him the materials necessary to prepare his legal papers. *Id.* at 4. On August 3, 2015, he grieved that staff was not getting him his copies on the same day he submitted a request. *Id.* at 7. On August 4, 2015, plaintiff filed a grievance because correctional officer Roxanne Hardin had told him, either that day or the day before, that defendant was planning to discipline him for abuse of the grievance system. ECF No. 35-2 at 9; ECF No. 35-1 at 35-36. Plaintiff states that he filed the grievance to document defendant's threats to take away his good-time credits. ECF No. 39 at 26 (PRDUF No. 38). The same day, plaintiff filed another grievance regarding the handling of his legal papers. ECF No. 35-2 at 11. He received a response (undated), noting that he had recently filed four grievances all dealing with the processing of his legal paperwork. *Id.* at 13.

5

The response concluded: "Also the number of grievances submitted on the same topic (processing of legal paperwork) is the reason for the reminder of the misuse of the grievance process will result in disciplinary action [sic]. This is not a threat, but only acknowledging the excessive amount of grievances submitted in a short amount of time." *Id.*

The parties also dispute whether defendant's statement at the July 6th or 8th meeting caused plaintiff any harm. Plaintiff claims damages for medical costs and harm to his mental health. ECF No. 1 at 3. Defendant contends that plaintiff paid nothing out-of-pocket for such costs while at the Jail, but plaintiff claims he was charged co-pays. ECF No. 34-2 at 11 (DUF No. 44); ECF No. 39 at 30 (PRDUF No. 44); ECF No. 3 at 3 (June 25, 2015 trust account statement attached to plaintiff's motion to proceed in forma pauperis, showing three $3 medical co-pay charges). Defendant argues that plaintiff lacks sufficient evidence to support his claims of enhanced mental health and medical difficulties following defendant's alleged retaliation. ECF No. 34-2 at 12 (DUF Nos. 46-50). Plaintiff disputes that and notes that he testified in his deposition that his anger, anxiety, and depression increased as a result of defendant's conduct. ECF No. 39 at 31-33 (PRDUF Nos. 46-50); ECF No. 35-1 at 43-45.

**III.     The Motion for Summary Judgment**

    **A. <u>Summary Judgment Standards</u>**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to

"'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that

7

is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead

a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the motion for summary judgment, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 34-4; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### B. Defendant's Motion for Summary Judgment

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) adverse action by a state actor against an inmate (2) because of (3) the inmate's protected conduct that (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Under the fourth prong, the plaintiff need not demonstrate that his speech was "actually inhibited or suppressed"; he may only show that the adverse action would chill or silence a person of ordinary firmness from future protected conduct. *Id*. at 568-69.

#### 1. Protected Conduct

Defendant first argues that the undisputed facts show that plaintiff was not engaged in protected conduct because plaintiff was abusing the grievance system by filing excessive grievances. ECF No. 34-1 at 20. As defendant recognizes, however, inmates enjoy a First Amendment right to use correctional grievance procedures. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (2009). Defendant cites no authority holding that the filing of excessive grievances renders such conduct unprotected. Instead, the cases cited by defendant find, unsurprisingly, that correctional authorities may place reasonable limitations on inmate access to the grievance process. *Menefield v. Helsel*, No. 94-16036, 1996 U.S. App. LEXIS 5551, at *12-13 (9th Cir. 1996); *Villegas v. Terhune*, No. CIV S-00-1760 FCD GGH P, 2006 U.S. Dist. LEXIS 6064, at *59-60 (E.D. Cal. Feb. 16, 2006). The courts did not find the conduct unprotected, but instead concluded that, because the inmates had abused the grievance system, it was legitimate for

9

authorities to limit their access to it. This analysis falls under the fifth element of the retaliation analysis (whether the defendant's action reasonably advanced a legitimate correctional goal), not the "protected conduct" element.

Even if defendant had provided the court with some authority holding that, when excessive, grievances lose their protected status (which he has not), the evidence regarding whether plaintiff's grievances were excessive is disputed. While defendant characterizes plaintiff's refusal to let the plumbing issue go as evidence that he was filing excessive grievances on the issue, a factfinder could conclude that it was reasonable for plaintiff not to be satisfied with being provided cleaning materials when sewage flowed into his cell but instead to seek a permanent fix for the issue, which defendant did not offer. While defendant claims that it was beyond his authority to offer a permanent solution, plaintiff counters that defendant could have requested such a solution from county officials, and a factfinder could so conclude. Moreover, plaintiff declares that defendant "approved" the grievance without actually solving the problem in order to prevent the problem from being reviewed by higher officials.

Additionally, defendant has not shown that plaintiff's grievances prior to the July 28, 2015 plumbing grievance that gave rise to the meeting between plaintiff and defendant were excessive. Plaintiff, on the other hand, has testified that it was necessary to file grievances at the Jail to "get most everything done." Because the evidence, taken in the light most favorable to plaintiff, could lead a factfinder to conclude that plaintiff was not abusing the grievance process, summary judgment cannot be granted to defendant on the grounds that plaintiff's grievances were abusive and therefore unprotected by the First Amendment.

### 2. Adverse Action

Defendant next argues that the undisputed facts show that defendant took no adverse action against plaintiff. ECF No. 34-1 at 22. Defendant claims that plaintiff has produced no evidence that defendant threatened him with discipline for using the grievance procedure.

"[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim*, 584 F.3d at 1270. Plaintiff has produced evidence (his declaration and verified complaint) that defendant told him he would face

discipline if he continued to file grievances, and that defendant "approved" his grievance about the pipes as a way of preventing further review. Defendant claims that no further review was available due to a change in the grievance process, but defendant has not provided the date of that change, so the court cannot determine whether that change was in place at the time of the meeting between plaintiff and defendant. Moreover, defendant's own statement on plaintiff's grievance, that further review *was* possible for grievances that had not been approved, contradicts defendant's claim here that, after the change in procedure, he became the highest point of review. Viewing the evidence in the light most favorable to plaintiff, plaintiff has raised a triable issue that defendant wished to stop plaintiff from continuing to grieve the plumbing issue and thus took an adverse action against him by threatening him with loss of good-time credits if he continued to use the grievance procedure.

### 3. Causation

Defendant next argues that plaintiff cannot show that his protected conduct was the substantial or motivating factor for defendant's statement, because: (1) his conduct was not protected, (2) no discipline was actually imposed on him, and (3) defendant was legitimately motivated by plaintiff's misuse of the grievance procedure. ECF No. 34-1 at 24. As stated above, plaintiff's filing of grievances was protected. Even if excessive grievances are not protected (a matter of law defendant has not established by citation to authority nor persuasive argument), there is a triable issue of fact as to whether plaintiff, at the time defendant made the statement at issue in this case, had filed an excessive number of grievances under the circumstances at issue here. There is also a triable issue of fact as to whether defendant was motivated by a legitimate desire to curb abusive grievances or by an illegitimate desire to chill plaintiff's non-abusive grievances. Finally, the fact that no discipline was actually imposed on plaintiff does not defeat his retaliation claim. As noted above, a threat is sufficient adverse action. *Brodheim*, 584 F.3d at 1270.

### 4. Chilling Effect

Defendant next argues that his statement did not have a chilling effect on plaintiff, because plaintiff filed many grievances later. But plaintiff need not show that he was actually

dissuaded from filing grievances, and instead may proceed if there is a triable issue that defendant's statement would chill the speech of a person of ordinary firmness. As a factfinder could, taking the evidence in the light most favorable to plaintiff, conclude that a person of ordinary firmness would be afraid of losing valuable good-time credits if he or she continued to press the plumbing issue or some other grievance, defendant has not demonstrated that the undisputed facts show that his conduct would not have a chilling effect.

### 5. Legitimate Purpose

The crux of defendant's motion for summary judgment is his argument that, by simply informing plaintiff of the disciplinary consequences of abuse of the grievance process, defendant served the legitimate correctional goal of curbing excessive grievances. But the evidence before the court concerning whether plaintiff's grievances were excessive – particularly in the time *before* defendant made the statement to plaintiff – is in conflict. Defendant has not shown that the grievances filed during that time were abusive (e.g., duplicative, excessive, or inappropriate). At best, defendant has provided some evidence that plaintiff may have filed excessive grievances during subsequent weeks. Taking this evidence in the light most favorable to plaintiff, a factfinder could conclude that defendant's statement was made to deter plaintiff from pursuing a legitimate grievance(s) rather than for the legitimate purpose of deterring abusive grievances.

### 6. Official Capacity

Defendant notes that plaintiff did not specify in his complaint whether he is suing defendant in his official or individual capacity. Defendant argues that, because he was acting in his job as Jail Commander at the time he made the statement, plaintiff may only sue him in his official capacity. ECF No. 34-1 at 28. That is not the law.

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

> On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law. When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions.

*Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). The fact that defendant was working when he made the statement does not transform the case into an official capacity case – it is simply the nature of all § 1983 cases, which seek to hold government employees liable for unconstitutional acts done under authority granted by the government.

Instead, to determine whether plaintiff intended to sue defendant in his individual capacity, official capacity, or both, the court must look to the nature of the case; particularly, the nature of relief sought. *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990). Here, plaintiff named only Kevin Jones as defendant – no county entity is named in the complaint. ECF No. 1 at 1. Plaintiff's list of his other cases demonstrates that he has sued, by name, the county and county entities. *Id.* at 4. These facts imply that plaintiff wished to sue defendant in his individual capacity. However, in addition to money damages, plaintiff seeks relief that only the county can provide, for example (1) an injunction "barring anyone outside of this court from taking time from me or depriving me of a mandated religious requirement to take my Kosher meals"[4] and (2) "removal of Kevin Jones." ECF No. 1 at 3, 5. These requests imply that plaintiff additionally wishes to sue defendant in his official capacity. This conclusion is supported by plaintiff's opposition brief, in which he states explicitly that he wishes to sue defendant in both his individual and official capacities. ECF No. 38 at 40.

/////

---

[4] Plaintiff's complaint does not concern Kosher meals; it is not clear why he included this request for relief.

Defendant argues that plaintiff's action against him in his official capacity fails because plaintiff lacks necessary proof. Plaintiff's suit against defendant in his official capacity is treated as a suit against Lassen County. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Plaintiff may not hold the county vicariously liable for defendant's allegedly unconstitutional acts under a *respondeat superior* theory. *Id.* at 691. Instead, he must show that the act was the result of a county policy or custom. *Id.* at 694.

A plaintiff may make such a showing several ways. He may prove that the defendant committed the act under a formal government policy or longstanding practice or custom. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). Or he may show that the defendant was an official with final policy-making authority such that the challenged conduct was an act of official government policy. *Id.* Whether an official has final policy-making authority is a matter of state law. *Id.* A plaintiff also may show that an official with final policy-making authority ratified a subordinate's unconstitutional action. *Id.* at 1346-47. Finally, a plaintiff may show that the municipality's failure to properly train the defendant was the moving force behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Such failure to train must evince deliberate indifference to the rights of municipal citizens for liability to attach to the municipality. *Id.*

Defendant argues that plaintiff cannot present any evidence of a government policy or custom to threaten inmates with discipline for filing grievances. ECF No. 34-1 at 29. Plaintiff apparently concedes that there was no such explicit policy, nor has he made showing of a custom of such behavior. But he responds that defendant failed to follow the discipline policies in place at the Jail, which shows that Lassen County failed to adequately train him. ECF No. 38 at 44.

Defendant's declaration notes that, under the discipline policies at the Jail, forfeiture of good-time credits was an allowable sanction for a major rules violation. ECF No. 34-3 at 5 (Decl. of Kevin Jones, ¶ 16). A major rules violation could be any conduct that disrupts or interferes with the security or orderly running of the Jail. *Id.* at 4 (Decl. of Jones, ¶ 13). To initiate the imposition of discipline for a major rules violation, the staff who witnessed the violation must prepare an incident report. *Id.* at 5 (Decl. of Jones, ¶ 15). Plaintiff apparently relies on

defendant's decision to speak to him rather than prepare an incident report to show that defendant did not follow the policy. However, there is nothing in the policy regarding informing an inmate who may be in the process of committing a rules violation of the possible consequences of his conduct. Thus, plaintiff has not shown that defendant violated Jail policy by failing to prepare an incident report and follow the consequent steps prescribed by the discipline policy. Plaintiff presents no other evidence that the county was deliberately indifferent to a need to train defendant regarding how to respond to inmate grievances and thus has not raised a triable issue of material fact that the county can be held liable under a failure-to-train theory.

While defendant does not address in his points and authorities whether he had final policy-making authority such that his conduct may be considered an official act, he declares that he did not have the ability to set policy at the Jail. ECF No. 34-3 at 2 (Decl. of Jones, ¶ 6). Instead, such policies "are set by federal law, state law, and local elected officials." *Id.*, ¶ 5. Plaintiff responds that defendant did have policy-making authority, but he has not provided any evidence or law supporting that claim.

It appears from defendant's own brief, however, that he did have some policy-making authority at the Jail. Defendant states that "California regulations pertaining to Type-II Local Detention [such as the Jail] are silent as to what constitutes 'misuse' or 'abuse' of the grievance system, or what constitutes 'excessive' filing. However, they do permit facilities to establish policy and procedure to 'control the submission of an excessive number of grievances.'" ECF No. 34-1 at 31 (citing Cal. Code Regs. tit. 15, § 1073[5]). Indeed, the regulation cited by defendant gives the administrator of the Jail the authority to "develop written policies and procedures whereby any inmate may appeal and have resolved grievances relating to any conditions of confinement." Cal. Code Regs. tit. 15, § 1073(a). Thus, how much policy making authority defendant has remains disputed but there is some evidence from which a factfinder could conclude that defendant had final authority over inmate-grievance policy-making such that his

---

[5] Subsection (b) of this regulation provides that the administrator of a Type II Detention Facility "may establish written policy and procedure to control the submission of an excessive number of grievances."

15

statement to plaintiff could be viewed as an act of official county policy. Accordingly, summary judgment of plaintiff's official capacity claim against defendant is not warranted.

### 7. Qualified Immunity

Defendant argues that plaintiff's claim against him in his individual capacity fails because he should be afforded qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the court considers: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court may consider either prong of the analysis first. *Id.* at 236.

Defendant essentially argues that his conduct was reasonable because he was simply warning plaintiff of the legitimate consequences of abusing the grievance system. But, because there is a triable issue of material fact regarding whether defendant legitimately made such a warning or illegitimately threatened plaintiff with discipline to deter plaintiff's grievances, the court cannot conclude at this time that defendant did not violate plaintiff's constitutional rights.

In addition, the right asserted by plaintiff – to be free from retaliation for utilizing an institutional grievance process – was clearly established in 2015. It has been established in the Ninth Circuit at least since 2009 that a threat of adverse action made to deter an inmate from filing grievances may violate the First Amendment. *Brodheim*, 584 F.3d 1262. Defendant does not show that he should not have known of this law. Accordingly, qualified immunity may not be granted at this time.

### 8. Damages

Lastly, defendant argues that plaintiff cannot support his claim for damages. Defendant claims that plaintiff lacks evidence to support his claim for compensatory damages because he has no evidence showing that he incurred any medical costs while at the Jail. Plaintiff's in forma pauperis motion, however, shows that he was indeed charged medical copays while incarcerated

16

at the Jail. Moreover, plaintiff testified in his deposition that his mental health problems were exacerbated as the result of defendant's alleged misconduct. ECF No. 35-1 at 43-46. This testimony creates a triable issue of fact as to whether plaintiff sustained compensable damages.

Defendant next argues that plaintiff's claim for punitive damages fails because he lacks evidence that defendant acted with the requisite state of mind. *See Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendant bases this argument on his contention that he acted "cautiously and prudently to preserve the orderly running of the jail," but, as discussed above, that fact has not been established at this stage in the proceedings and it remains genuinely disputed.

Accordingly, summary judgment is not appropriate on plaintiff's damages claims.

## IV. Order and Recommendation

Accordingly, it is hereby ORDERED that the Clerk of Court randomly assign a United States District Judge to this case.

Further, it is RECOMMENDED that defendant's February 23, 2018 motion for summary judgment (ECF No. 34) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 17, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE